**UNITED STATES of America**

v.

**Victor D. TRAXLER and Thomas V. Traxler.**

**Violation Notice Nos. W087229B, W087230B.**

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 23, 1994.

John Dowdy, Asst. U.S. Atty., Jackson, MS, for U.S.

Victor D. Traxler, pro se.

Thomas V. Traxler, pro se.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court pursuant to Rule 58 of the Federal Rules of Criminal Procedure on appeal from the final judgment entered on August 30, 1993, by United States Magistrate Judge Alfred G. Nicols, Jr., finding both Defendants guilty of taking migratory birds with the aid of bait.[1]  Having considered the record of this case, the brief of the Defendants, the brief of the United States and the Findings of Fact and Conclusions of Law of the United States Magistrate Judge, the Court finds that the convictions of both Defendants should be affirmed.

### I.  *Background*

Thomas V. "Vic" Traxler and Victor D. "Dwight" Traxler, father and son, were convicted by the United States Magistrate Judge of killing migratory birds (mourning doves) with the aid of bait in violation of 16 U.S.C. § 703 and 50 C.F.R. § 20.21(i).  Prior to the opening day of dove season, Special Agent Keith McCartney with the United States Fish and Wildlife Service flew over a field in Hinds County, Mississippi, in which there was a large concentration of doves and which gave the appearance from the air that it may have been baited.  That night Agent McCartney and another federal agent went to the field and found wheat, ear corn, shelled corn, corn chops, and sunflower seeds.  They returned to the field on September 3, 1992, and found wheat and sunflower seeds in places where they had not seen them earlier.  Considering the field to be illegally baited, the agents with the cooperation of state game wardens arranged for agents and wardens to conduct hidden surveillance of the field on the morning of September 5, 1992, the opening day of dove season.  After watching for about an hour after shooting began, the officers walked into

---

1. The Defendants consented to trial by a Magistrate Judge as permitted by Rule 58 of the Federal Rules of Criminal Procedure.  A bench trial was held on July 19 and 20, 1993, and the Magistrate Judge found both Defendants guilty of the crime charged.  The Magistrate Judge entered his Findings of Fact and Conclusions of Law on August 13, 1993.  The Defendants were sentenced on August 18, 1993, to pay a fine of $500 each and to serve one year of probation.

the field, checked hunting licenses and guns, confiscated the shot doves, and stopped the hunt. Vic Traxler and Dwight Traxler were in the field as hosts of the hunt and had twelve other guests. Dwight Traxler, in fact, left the field by a back route when the officers appeared but later admitted having been there.

After discussions with the assistant United States Attorney, the federal agents decided to charge Vic Traxler and Dwight Traxler with the taking of migratory birds with the aid of bait. There were no charges brought against the other hunters.

## II. *Analysis*

■ The standard of review applied by federal appellate courts regarding the sufficiency of the evidence is to "review the evidence 'in the light most favorable to the government and affirm if substantial evidence supports the convictions.'" *United States v. Sylvester*, 848 F.2d 520, 522 (5th Cir.1988) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Livingston*, 816 F.2d 184, 192 (5th Cir.1987)). In this case, the evidence is more than ample for the United States Magistrate Judge to have found the Defendants guilty of the crime charged.

At the trial, the Defendants readily admitted that they had prepared the field for the purpose of attracting doves. They insisted, however, that what they had done had been done in accordance with 50 C.F.R. § 20.21 which contains the following provisions:

Migratory birds on which open seasons are prescribed in this part may be taken by any method except those prohibited in this section. No persons shall take migratory game birds:

... (i) By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat or other grain, salt, or other feed. However, nothing in this paragraph shall prohibit: (1) The taking of all migratory game birds, including waterfowl, on or over standing crops, flooded standing crops (including aquatics), flooded harvested croplands, grain crops properly shocked on the field where grown, or grains found scattered solely as the result of normal agricultural planting or harvesting; and (2) The taking of all migratory game birds, except waterfowl, on or over any lands where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed has been distributed or scattered as the result of *bona fide* agricultural operations or procedures or as a result of manipulation of a crop or other feed on the land where grown for wildlife management purposes: *Provided*, That manipulation for wildlife management purposes does not include the distributing or scattering of grain or other feed once it has been removed from or stored on the field where grown....

The Defendants presented proof and argued at trial that they had carefully read and researched the regulations, had conferred with state game wardens, had read a number of national magazine articles regarding the preparation of dove fields, and had seen a video prepared by the Mississippi Department of Wildlife and Parks, concerning legal dove field preparations. Their position is that they grew crops in the field which they manipulated for wildlife management purposes and that they scattered wheat as a part of a bona fide agricultural operation. Defendants contend that the regulation is unconstitutionally vague. They presented proof that Dwight Traxler is a former state game warden and thought that the field was legal. Two state game wardens, one of whom was on the surveillance team, testified they would not have charged Defendants based upon

what they had seen in the field. One of the state officers testified that he had examined the field before September 5 and had advised the Traxlers that the field was legal. The federal law and regulations covering dove hunting in Mississippi are enforced by both federal and state officers. However, although conflicting opinions by state and federal officers may cause confusion in cases such as this, federal courts decide those charges of violation of law brought in federal court.

Had the field only contained wheat, the issue would have been closed. Defendants showed that they prepared parts of the field for winter grazing by disking it, sowing wheat, rye grass and clover and spreading lime and fertilizer. They also proved that they had used the field in late 1992 for cattle grazing. Had the entire field been so prepared the field would have qualified under the exception allowing hunting "over any lands where ... wheat or other grain ... has been distributed or scattered as the result of *bona fide* agricultural operations or procedures...." 50 C.F.R. § 20.21(i). This would have been true in spite of the testimony of the expert of the government that the normal earliest planting date for wheat to be used as forage in the central region of Mississippi is September 1. On cross-examination that expert admitted that wheat to be used as forage could be planted as early as mid-August, although at greater risk due to lack of moisture and insects.

The evidence showed, however, that only strips of the field had been disked and that the wheat had not been evenly distributed. Because of this, the magistrate judge properly found that the wheat had not been planted as a part of a bona fide agricultural operation.

Defendants also argue that they were legally manipulating crops or other feed for wildlife management purposes. Defendants carefully presented evidence that they had planted a portion of the seven acre field in alternating rows of sunflowers and peas with corn mixed into those rows. They then explained that they "manipulated" those crops for the doves weekly for ten or twelve weeks prior to the dove season by pulling sunflower heads or ears of corn, placing them in sacks and thrashing them by beating the sacks and then spreading the sunflower seeds or kernels of corn on small disked areas around the field. The expressed purpose for doing this was to provide feed which would attract doves. They argue that they were "manipulating" crops on the land where such crops were grown for wildlife management purposes.

The regulation allows the planting of a crop, such as corn or sunflowers, for the sole purpose of attracting wildlife including doves. The regulation allows such crops to be manipulated by cutting them with a bushhog or combine so that the grain is scattered on the ground. The regulation allows the hunting of doves over such a prepared field even though those crops were not grown as a result of a bona fide agricultural operation. *See generally* 50 C.F.R. § 20.21(i).

However, the regulation does not allow the distributing or scattering of grain or other feed once it has been removed from or stored on the field where grown. Here the corn and sunflower seeds were removed from the place in the field where they had been grown and scattered over other parts of the field. Also, the placing of the sunflower heads and ears of corn in the sacks was a "storing" of the grain, although only for a short time. Defendants did not comply with the exception contained in the Regulation.

A third issue clearly shown by the evidence, but not addressed by the magistrate judge in his opinion ' or by either of the parties on appeal, concerns the cracked corn or "chops" found in the field. Apparently, the Defendants argued that while shelling the corn from the cob, they beat the cobs with a hammer against the bumpers of their pickup trucks and that in so doing some of the kernels were broken. The proof of the government to the contrary was that corn chops were scattered about the field. Corn chops is feed and clearly had not been distributed or scattered for a bona fide agricultural feeding operation, but for the purpose of baiting the field for doves.

■ Defendants' claim that the evidence was insufficient to support their convictions

is not well taken. *See United States v. Sylvester*, 848 F.2d 520, 522 (5th Cir.1988). Also, their claim that the regulation is unconstitutionally vague is not well taken. *See United States v. Brandt*, 717 F.2d 955, 958–59 (6th Cir.1983) (concluding that 50 C.F.R. § 20, 21(i), the same regulation at issue in this case, was not unconstitutionally vague).

Defendants also charge that the United States Attorney abused his discretion by charging them and not charging their twelve guests. In the federal court system, the prosecutor has broad discretion as to whom to charge. *See Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Carter*, 953 F.2d 1449, 1462 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992). The prosecutor did not abuse that discretion in this case.

### III. *Conclusion*

For the reasons set forth above, the Court finds that the appeal of the Defendants should be dismissed.

Therefore, the convictions of both Defendants are hereby AFFIRMED.